## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**JIMMY JONES**                                                    **PLAINTIFF**

**v.**                                         **Civil No. 3:20-cv-00608-KHJ-BWR**

**KILOLO KIJAKAZI,[1]**
*Acting Commissioner of Social*
*Security Administration*                                   **DEFENDANT**

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

BEFORE THE COURT is the Motion [12] for Summary Judgment filed by Plaintiff Jimmy Jones. Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, has filed a [18] Response and Plaintiff a [19] Rebuttal. Having considered the memoranda, submissions of the parties, the record, and relevant legal authority, the undersigned United States Magistrate Judge recommends denying the Motion [12] for Summary Judgment, affirming the Acting Commissioner of Social Security's decision, and dismissing this case with prejudice.

## I. BACKGROUND

Plaintiff Jimmy Jones ("Plaintiff" or "Jones") filed an application for Title II benefits on July 16, 2018. Admin. R. [10] at 13. Jones alleges that his disability began on April 1, 2018. *Id*. Defendant Kilolo Kijakazi, Acting Commissioner of Social Security ("Defendant" or "Commissioner"), denied Jones' application initially and

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is automatically substituted, in place of Andrew Saul, as Defendant in this action. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

upon reconsideration. *Id*. Jones requested a hearing before an Administrative Law Judge ("ALJ"), who held the hearing via video, on August 7, 2019. *Id*. Plaintiff was represented by counsel at the hearing. *Id*.

The ALJ rendered a decision unfavorable to Jones on August 28, 2019, finding that Jones was not under a disability within the meaning of the Social Security Act from July 16, 2018, through the decision date. *Id*. at 27-28. The Appeals Council denied Jones' request for review, *id*. at 5, and he filed the instant petition for judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423(d)(1)(A), *see* Compl [1].

## II.  <u>DISCUSSION</u>

### A.    **Standard of Review**

The Court's review of the Commissioner's denial of social security benefits is limited to an inquiry into "whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (quotation omitted). Evidence is substantial if "a reasonable mind would support the conclusion[;]" there "must be more than a scintilla, but it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (per curiam) (quotation omitted).

Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there

is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case *de novo*, or substitute its judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

The Court must, however, despite its limited role, "scrutinize the record in its entirety to determine the reasonableness of the decision . . . and whether substantial evidence exists to support it." *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992). But "procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)(internal citation and quotations omitted). If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

**B.     Standard for Entitlement to Social Security Benefits**

A claimant must prove that he or she suffers from a disability in order to be qualified for benefits. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The Social Security Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

42 U.S.C. § 423(d)(1)(A). The Commissioner typically employs a five-step sequential process to determine whether a claimant is disabled within the meaning of the Social

3

Security Act. 20 C.F.R. § 404.1520; *see also Waters v. Barnhart*, 276 F.3d 716, 718

(5th Cir. 2002). This five-step analysis is as follows:

> First, the claimant must not be presently working. Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment enumerated in the listing of impairments in the appendix to the regulations. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the [Commissioner] to establish that the claimant can perform relevant work. If the [Commissioner] meets this burden, the claimant must then prove that he cannot in fact perform the work suggested.

*Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *see also Garcia v. Berryhill*, 880

F.3d 700, 704 (5th Cir. 2018). A claimant bears the burden of proof with respect to

the first four steps of the inquiry; the burden shifts to the Commissioner at step five.

*Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

## C.    The Administrative Law Judge's Decision

In her August 28, 2019, decision, the ALJ applied the five-step sequential

analysis, set forth in 20 C.F.R. 404.1520(b)-(f), and determined that Plaintiff was not

disabled. The ALJ found at the first step that Jones had not engaged in substantial

gainful activity after the alleged onset date of April 1, 2018. Admin. R. [10] at 15. At

the second step, the ALJ found that Jones had the following severe impairments:

degenerative disc disease, degenerative joint disease of the lumbar spine, bilateral

hip degenerative joint disease, major depressive disorder, anxiety, rotator cuff

tendonitis, detached supraspinatus tendon, and obesity. *Id*. The ALJ further found

that Plaintiff had the following non-severe impairments: gastroesophageal reflux disorder, substance use disorder, including methamphetamine use disorder, marijuana use disorder, and cocaine use disorder. *Id*. at 16. The ALJ held that "[t]he above medically determinable impairments significantly limit the ability to perform basic work activities as required by [Social Security Ruling] 85-28." *Id*. at 16.

At the third step, the ALJ determined that Jones did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 17. Next, the ALJ examined the record and determined that Jones had the residual functional capacity[2] ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b)[3] except he can occasionally climb ramps or stairs and ladders, ropes, or scaffolds. He can occasionally balance, kneel, stoop, crouch, and crawl. He can frequently reach with the dominant right upper extremity. A medically required assistive device is needed for ambulation frequently. The contralateral extremity can be used to lift and carry up to the exertional limitations. He has the ability to understand, remember, and carry out instructions to perform simple, routine tasks. He can respond appropriately to others and work situations where there is frequent interaction with supervisors, coworkers and the general public. He can sustain concentration and persistence for two-hour periods at a time.

*Id*. at 19.

At the fourth step, the ALJ concluded that Jones was unable to perform any past relevant work. *Id*. at 26. At the fifth step, the ALJ concluded that based on Jones'

---

[2] The residual functional capacity is defined as the "the most [an individual] can still do despite [their] limitations" . . . "based on all the relevant evidence in [their] case record." 20 C.F.R. § 404.1545 (a)(1).
[3] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR 404.1567(b).

age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that he could perform. *Id*. Accordingly, the ALJ determined that Jones was not disabled within the meaning of the Social Security Act. *Id*. at 26. Plaintiff appealed that decision to this Court. Compl. [1].

## III. <u>ANALYSIS</u>

Plaintiff raises three issues on appeal: (1) whether the ALJ failed to consider all of his functional limitations in assessing Plaintiff's physical RFC; (2) whether the ALJ improperly substituted her medical judgment to determine the limitations caused by his severe mental impairments in crafting Plaintiff's mental RFC; and (3) whether the Commissioner carried her step five burden of establishing the existence of alternative work, existing in significant numbers in the national economy, which Plaintiff can perform. The Court addresses each issue in turn.

## A. **Substantial Evidence Supports the ALJ's Physical RFC Determination.**

Plaintiff contends that the ALJ's physical RFC determination is unsupported by substantial evidence. Mem. [13] at 6-9. Specifically, Plaintiff argues that the ALJ failed to include functional limitations related to his severe physical impairments of rotator cuff tendinitis and detached supraspinatus tendon in the physical RFC determination. *Id*. at 6. The Commissioner counters that substantial evidence supports the ALJ's physical RFC determination, and that Plaintiff failed to present any evidence that his impairments impose functional limitations beyond those accounted for by the ALJ. Mem. [18] at 6.

A claimant's RFC is his ability to work despite all of his limitations resulting from his impairments. *See* 20 C.F.R. § 404.1545(a); *Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990). In evaluating the claimant's RFC, the ALJ must consider how the claimant's impairments affect his physical, mental, and other abilities, as well as the total limiting effects of his impairments. *See* 20 C.F.R. § 404.1545. The ALJ has the sole responsibility for determining a claimant's RFC based on the record as a whole. *See Villa*, 895 F.2d at 1023-24; 20 C.F.R. § 404.1545(a)(3).

To begin, the ALJ did include functional limitations related to Plaintiff's severe impairments of right rotator cuff tendinitis and left detached supraspinatus tendon in the physical RFC determination. *See* Admin. R. [10] at 19. The ALJ reduced Plaintiff's physical RFC to a range of light work, based in part on, the functional limitations imposed by both conditions. *Id*. at 24. The ALJ determined that Plaintiff "can frequently reach with the dominant right upper extremity." *Id*. at 19. The ALJ further determined that "[t]he contralateral extremity can be used to lift and carry up to the exertional limitations."[4] *Id*. Therefore, Plaintiff's contention that the ALJ failed to include functional limitations related to his severe physical impairments of rotator cuff tendinitis and detached supraspinatus tendon lacks merit.

Additionally, substantial evidence supports the ALJ's physical RFC determination. Concerning the left shoulder, the ALJ noted that Plaintiff saw Dr.

---

[4] Merriam-Webster's dictionary defines "contralateral" as "occurring on or acting in conjunction with a part on the opposite side of the body." *Contralateral*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/contralateral (last visited July 18, 2022). Thus, the "contralateral" extremity referred to in the ALJ's physical RFC determination is Plaintiff's left arm/shoulder.

William Lewis on April 29, 2019, complaining of left arm pain after allegedly falling off a dump truck two months earlier. Admin. R. [10] at 22. Subsequent imaging of the left shoulder showed a detached supraspinatus tendon. *Id*. The ALJ later noted that Plaintiff testified that he could not lift ten pounds too long because of his left arm. *Id*. at 24. However, as the ALJ correctly stated, Plaintiff is right-handed. Admin. R. [10] at 24 (citing *id*. at 276); *see also id*. at 44. With respect to the right shoulder, the ALJ noted that Plaintiff again saw Dr. Lewis on June 21, 2019, complaining of pain stemming from an alleged altercation with his wife. *Id*. at 22. While Dr. Lewis made a differential diagnosis of rotator cuff tendonitis, the subsequent imaging of the right shoulder was normal. *Id*. at 22 (citing *id*. at 487-89).

Based on the aforementioned evidence, in conjunction with a consideration of Plaintiff's other physical impairments, the ALJ reduced Plaintiff's physical RFC to light work. Admin. R. [10] at 24. The ALJ went on to explain that she "added postural limitations as well as reaching limitations to account for [Plaintiff's] right hip osteoarthritis and his left arm tendinitis."[5] *Id*. at 24. However, the ALJ also noted that "the evidence does not generally support the extent and severity of the [Plaintiff's] limitations. Inconsistences between the allegations and other evidence of

---

[5] The ALJ incorrectly stated that Plaintiff had "left arm tendinitis." Admin. R. [10] at 24; *see Cf. id*. at 487-89 (indicating a deferential diagnosis of rotator cuff tendinitis associated with right shoulder pain). However, it is apparent from the ALJ's opinion that she understood the left shoulder to have a detached supraspinatus tendon and the right shoulder to have rotator cuff tendinitis, *see id*. at 22. Because it is apparent from the ALJ's decision that a single misstatement of the condition associated with the left arm/shoulder did not affect the analysis or outcome, it constitutes a scrivener's error. *See Galvan v. Berryhill*, Civ. No. 4:15-cv-3718, 2018 WL 993882, at *3 n.3 (S.D. Tex. Feb. 21, 2018); *see also, e.g., Wills v. Colvin*, Civ. No. 1:14-cv-504, 2016 WL 792693, at *6-7 (E.D. Tex. Mar. 1, 2016)

record support the finding that he was capable of work within the [RFC] . . . ." *Id.* at 20.[6] Therefore, substantial evidence supports the ALJ's physical RFC determination.

It bears reminding that an individual asserting a DIB claim has the burden of proving their disability. *Hames v. Heckler*, 707 F.2d at 162, 165 (5th Cir. 1983) (citing *Western v. Harris*, 633 F.2d 1204 (5th Cir. 1981)); see also *Newton*, 209 F.3d at 453 (noting claimant bears the burden of proof with respect to the first four steps of the disability inquiry). Plaintiff suggests that the ALJ failed to include functional limitations related to his severe physical impairments, however, he fails to explain what additional or alternative limitations should have been included. Nor has he pointed to any objective medical evidence in the record to support the imposition of any additional functional limitations beyond those included by the ALJ in the physical RFC determination. Thus, Plaintiff has failed to demonstrate that any additional limitations were warranted.

Moreover, Plaintiff's assertion that remand is required where an ALJ allegedly fails to incorporate functional limitations into the RFC for impairments deemed severe at earlier steps represents an incorrect statement of law.[7] As the district court

---

[6] For example, the ALJ cited Plaintiff's representation to Dr. Cochays that he had a history of anxiety, but denial of any mental symptoms at his subsequent visit with Dr. Lewis. Admin. R. [10] at 22. The ALJ also cited other inconsistencies, such as Plaintiff's continually shifting answers to various doctors and in disability reports, regarding his educational level. *Id.* at 22-23.

[7] Plaintiff also directs the Court's attention to *Risinger v. Commissioner, Social Security Administration*, Civ. No. 6:12-cv-885, 2014 WL 4829527, at *7 (E.D. Tex. Sept. 26, 2014). Mem. [13] at 8. However, in *Risinger*, the court found that the ALJ erred by not including manipulative limitations in the RFC after finding severe impairments of connective tissue disease, lupus, and rheumatoid arthritis because the ALJ did not explain why he did not include such limitations. *Id.* at *7. The court found that the ALJ failed to discuss and analyze the objective medical evidence thoroughly. *Id.* Here, the ALJ thoroughly discussed the objective medical evidence in her explanation for assigning the particular RFC in this case. *See* Admin. R. [10] at 19-26.

explained in *Winston v. Berryhill* –which Plaintiff cites in support of his position– the finding of a severe impairment "does not mandate additional limitations in the RFC." Civ. No. 3:16-cv-419, 2017 WL 1196861, at 13 (N.D. Tex. Mar. 31, 2017). Instead, "[t]he ALJ must clearly consider the severe impairments in determining the claimant's RFC, not necessarily assess limitations for each severe impairment." *Id*. Here, as evidenced by the discussion above, the ALJ considered Plaintiff's severe physical impairments of rotator cuff tendinitis and detached supraspinatus tendon, and included functional limitations related to those severe impairments, in assessing Plaintiff's physical RFC. *See* Admin. R. [10] at 19-26.

Under this issue, Plaintiff also argues that the hypothetical question posed to the vocational expert ("VE") allegedly failed to include functional limitations related to Plaintiff's severe physical impairments; and thus argues, the ALJ's ultimate disability determination is unsupported by substantial evidence. Mem. [13] at 9. After arriving at an RFC that takes into account all of the restrictions "reasonably warranted by the evidence," an ALJ may rely on the response of a VE to a hypothetical question on job availability as it relates to a person with the claimant's limitations. *Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004); *see also Masterson v. Barnhart*, 309 F.3d 267, 273-74 (5th Cir. 2002). To serve as substantial evidence, the VE's testimony must be based on a hypothetical question that incorporates all of the limitations recognized by the ALJ and must be subject to the claimant's cross-examination. *See Masterson*, 309 F.3d at 274; *Boyd v. Apfel*, 239 F.3d 698, 706-07 (5th Cir. 2001).

Here, the hypothetical question posed to the VE incorporated all of the recognized physical limitations, s*ee* Admin. R. [10] at 69-70, and Plaintiff had the opportunity to cross-examine the VE on this issue, *id*. at 71-73. Moreover, the undersigned has already determined that substantial evidence supports the ALJ's physical RFC determination, and that it included the physical functional limitations supported by the evidence. The ALJ was not required to incorporate any further physical functional limitations. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (holding ALJ is not required to incorporate limitations into the hypothetical questions not supported by the record). Therefore, Plaintiff's argument that the hypothetical question posed to the VE was defective lacks merit.

In sum, substantial evidence supports the ALJ's physical RFC determination, and the ALJ did not pose a defective hypothetical question to the VE. Accordingly, to the extent Plaintiff claims that the ALJ erred in determining his physical RFC or in posing hypothetical questions to the VE, those claims are without merit, and remand is not required on this basis.

**B.    Substantial Evidence Supports the ALJ's Mental RFC Determination.**

Plaintiff next contends that the ALJ's mental RFC determination is unsupported by substantial evidence because it lacks the support of any medical opinion. Mem. [13] at 9-11. Specifically, Plaintiff argues that the mental RFC determination results from the ALJ's own improper interpretation of the record. *Id*. at 11. The Commissioner counters that Plaintiff's argument is meritless and substantial evidence supports the ALJ's mental RFC determination. Mem. [18] at 6.

As stated previously, a claimant's RFC is his ability to work despite all of his limitations resulting from his impairments. *See* 20 C.F.R. § 404.1545(a); *Villa*, 895 F.2d at 1023. The ALJ has the sole responsibility for determining a claimant's RFC. *Taylor*, 706 F.3d at 602-603. In making that determination, the ALJ may properly interpret medical evidence to determine the claimant's capacity for work. *Id*. Additionally, there is no requirement that the ALJ's RFC finding must mirror or match a medical opinion. *Myers v. Saul*, Civ. No. 5:20-cv-445, 2021 WL 4025993, at *8 (W.D. Tex. Sept. 3, 2021). The ALJ's RFC assessment is not a medical opinion. *Joseph-Jack v. Barnhart*, 80 F.App'x. 317, 318 (5th Cir. 2003). Unlike medical providers and medical consultants, the ALJ considers additional evidence, including the claimant's statements and testimony concerning his symptoms, his activities of daily living, the frequency and intensity of pain, and the effects of medication, as well as all other medical evidence and opinion statements in the record. *See* 20 C.F.R. § 404.1529. Therefore, the only question before this Court is whether substantial evidence supports the ALJ's mental RFC determination.

The ALJ's mental RFC assessment first provides that Plaintiff can "understand, remember, and carry out instructions to perform simple, routine tasks." Admin. R. [10] at 19. In making that determination, the ALJ considered Dr. Jan Boggs' Comprehensive Mental Status Examination Report. *Id*. at 23-24. Dr. Boggs' report indicated that Plaintiff's "remote recall was fairly good." *Id*. at 424. Plaintiff "repeated five digits forward and three in reverse." *Id*. Plaintiff also "remembered two of five recent memory items." *Id*. Dr. Boggs concluded that "[t]his was a low average

result." *Id*. Dr. Boggs' report noted that Plaintiff "did [not] do as well on the grocery store arithmetic." *Id*. Plaintiff "understood two of three daily problem solving situations but not proverbs." *Id*. Nonetheless, Dr. Boggs concluded that Plaintiff could follow directions and sustain tasks, as well as "handle[] money and other matters." *Id*. at 425. The ALJ also considered Plaintiff's hearing testimony, allegations, and reports regarding his ability to carry out routine tasks. *Id*. at 24. In one function report, Plaintiff indicated an ability to perform a number of routine tasks, including doing laundry, washing dishes, paying bills, using a checkbook, and shopping for groceries. *Id*. at 273-74. Plaintiff also indicated that he could follow instructions "pretty good." *Id*. at 276. Therefore, substantial evidence supports this determination.

Next, the ALJ's mental RFC assessment provides that Plaintiff "can respond appropriately to others and work situations where there is frequent interaction with supervisors, coworkers and the general public." *Id*. at 19. In an earlier portion of her opinion, the ALJ noted that Plaintiff indicated difficulty getting along with others and reported to Dr. Boggs that he had experienced some difficulty controlling his emotions. *Id*. at 18. Yet, in one function report, Plaintiff indicated that he visits with other individuals daily and goes to the store regularly. *Id*. at 18 (citing *id*. at 275). That report also shows that Plaintiff gets along "great" with authority figures and has never had any work-related issues based on his inability to associate with others. *Id*. Therefore, substantial evidence supports this determination also.

Finally, the ALJ's mental RFC assessment provides that Plaintiff can "sustain concentration and persistence for two-hour periods at a time." Admin. R. [10] at 19.

On this issue, the ALJ identified a conflict in the evidence between Plaintiff's assertions and the objective medical evidence. *See id*. at 18 (citing *id*. at 276). But conflicts in the evidence are for the ALJ to decide, not the courts. *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 271). The ALJ based this portion of her mental RFC assessment on Dr. Boggs' conclusion that Plaintiff could follow instructions and sustain tasks, *id*. at 18 (citing *id*. at 425), as well as her own observations during the hearing that Plaintiff was able to concentrate, provide sufficient answers to questions, and report his symptoms. *Id*. at 18. Therefore, substantial evidence supports this determination as well.

Before concluding, the Court pauses to address the implicit assertion that the ALJ erred in evaluating whether Plaintiff's severe mental impairments met the requirements of a listed impairment at step three. *See* Mem. [13] at 9-10. At step three, the ALJ determines if any of the claimant's severe impairments meets or equals an impairment enumerated in the listings of impairments in the appendix to the social security regulations. *See* 20 C.F.R. § 404.1520(a)(4)(iii) (citing 20 C.F.R. Part 404, Subpt. P, App'x 1). If all the criteria of a Listing are met or equaled, the claimant is considered disabled. 20 C.F.R. § 404.1520(d); *Whitehead*, 820 F.3d at 780-81.

Concerning Plaintiff's mental impairments, the ALJ considered Listings 12.04, pertaining to depressive, bipolar, and related disorders, and 12.06, pertaining to anxiety-related disorders. Admin. R. [10] at 17. Both of those Listings require the ALJ to analyze the "paragraph B" criteria, which describe four broad areas of mental

functioning. *See* Listing 12.00(E). The four broad areas include (1) understanding, remembering, or applying information; (2) interaction with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. To meet a listing that includes the paragraph B criteria, the claimant must have an extreme limitation in one or a marked limitation in two of the criteria. *See* Listing 12.00(F)(2).

Based on Plaintiff's function report, hearing testimony, and Dr. Boggs' evaluation, the ALJ assessed Plaintiff's mental functioning in each of the four broad areas. *See* Admin. R. [10] at 18-19. Because the record showed that Plaintiff could follow instructions and perform various tasks and that his remote recall was fairly good, the ALJ found that Plaintiff had a moderate limitation in his ability to understand, remember, or apply information. *Id*. at 17-18. The ALJ assessed Plaintiff's limitations in interacting with others to be moderate. *Id*. at 18. The ALJ noted that while Plaintiff stated he had difficulty being in groups and getting along with others, he also said that he was able to socialize and go out to dinner with his wife or to visit his grandmother and grandchildren. *Id*. The ALJ also noted that in his function report, Plaintiff said he visits daily with others and often goes to the store. *Id*. at 18. The report further provided that Plaintiff gets along "great" with authority and has never been fired based on an inability to work with others. *Id*. at 277.

The ALJ found that Plaintiff's ability to concentrate, persist, and maintain pace was moderately limited. *Id*. In support of that determination, she cited Dr. Boggs' conclusion that Plaintiff could follow directions, sustain tasks, and handle

money. *Id*. The ALJ also noted that Plaintiff had demonstrated an ability to report his symptoms to various doctors and that during the hearing Plaintiff could concentrate well enough to answer questions posed to him. *Id*. Finally, the ALJ determined that Plaintiff was mildly limited in his ability to adapt or manage himself. *Id*. This finding was based on Plaintiff's testimony, function report, representations to Dr. Boggs, and his recognized medical problems and requests for treatment. *Id*. Because Plaintiff's limitations did not cause at least two marked limitations, nor one extreme limitation, he did not meet either Listing 12.04 or 12.06.[8] *See* Admin. R. [10] at 18. Therefore, the ALJ applied the correct legal standard, and substantial evidence supports her step three determination.[9]

In sum, substantial evidence supports the ALJ's mental RFC determination. Contrary to Plaintiff's assertion, the record contains supporting objective medical evidence. And the ALJ's written opinion establishes that her determination is the result of a thorough consideration of that objective medical evidence, and Plaintiff's hearing testimony, allegations, and function reports, as well as her own observations of Plaintiff from the hearing. Accordingly, to the extent Plaintiff claims that the ALJ

---

[8] It is worth noting that state agency medical consultant Dr. Jesse Dees found that Plaintiff experienced no more than mild limitations in each of the four functional areas. *See* Admin. R. [10] at 82. As the record explains, the ALJ increased Plaintiff's limitations from mild to moderate, in three of the four functional areas, based on additional objective medical evidence and Plaintiff's functional reports and testimony. *See id*. at 17-18, 24-25.

[9] Even if the ALJ had erred at step three – or step two – such an error would not warrant remand. *See Taylor*, 706 F.3d at 603 (applying harmless error analysis where ALJ proceeded to evaluate claimant's RFC and ability to perform existing jobs at steps four and five). Here, similar to *Taylor*, there is no evidence that Plaintiff's mental health claims are severe enough to prevent him from holding substantial gainful employment.

erred in determining his mental RFC, that claim is without merit, and remand is not required on this basis.

**C.    Substantial Evidence Supports the ALJ's Step Five Jobs Determination.**

Plaintiff finally challenges the ALJ's step five determination, arguing that the ALJ erred in finding that work exists in significant numbers within his RFC. Mem. [13] at 12. Specifically, Plaintiff argues that the VE's testimony was inconsistent with the description of the job of storage rental clerk found in the Dictionary of Occupational Titles ("DOT") and that it was an error to rely on that testimony without explaining the discrepancies. *Id*. at 11-13. Plaintiff further argues that the ticket taker job does not exist in significant numbers in the national economy. *Id*. at 13-14.

At step five, a claimant who cannot return to his or her past work is not disabled if he or she has the RFC to engage in work available in the national economy. 20 C.F.R. § 404.1520(f). The burden at step five is squarely on the Commissioner to show that there is other work in the national economy that a claimant can perform. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). However, once the Commissioner has made the requisite showing at step five "the burden shifts back to the claimant to rebut this finding." *Newton*, 209 F.3d at 453 (finding burden shifts back to claimant after Commissioner has made requisite showing at step five); *see also Perez*, 415 F.3d at 461 (explaining ultimate burden of proof is on claimant during sequential evaluation, notwithstanding that burden at step five shifts to Commissioner).

     *a.*    *Storage Rental Clerk Job*

Plaintiff first argues that the job of storage rental clerk identified by the VE, which is performed at reasoning level three[10], exceeds his mental limitations to simple, routine tasks. Mem. [13] at 11-12. According to Plaintiff, courts have determined that jobs at a reasoning level of three, such a storage rental clerk, are inconsistent with limitations to simple and routine tasks. *Id.* at 12. In support of that position, Plaintiff cites three cases: *Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005); *Lockett v. Colvin*, Civ. No. 4:12-cv-221, 2013 WL 4854529 (N.D. Tex. Sept. 11, 2013); *Graham-Willis v. Colvin*, Civ. No. 1:12-cv-2489, 2013 WL 6840465 (D. S.C. Dec. 27, 2013). Mem. [13] at 12.

To begin with, Plaintiff's argument that the Commissioner failed to carry her burden at step five because his RFC limitation to simple and routine tasks conflicts with the DOT assessment of a storage rental clerk, lacks merit. The Fifth Circuit has not addressed whether a claimant limited to simple, routine tasks can perform jobs that the DOT classifies as requiring a reasoning level of three, and other circuits have split on the issue. *See Johnson v. Astrue*, Civ. No. 2:11-cv-3030, 2012 WL 5472418, at *11 (E.D. La. Oct. 5, 2012) (collecting cases), *report and recommendation adopted*, 2012 WL 5472303 (E.D. La. Nov. 9, 2012). However, "the majority of federal district courts have concluded that 'a job requiring level-three reasoning does not necessarily conflict with an RFC limited to simple and unskilled work.'" *Ruffin v. Colvin*, Civ. No. 3:16-cv-18, 2017 WL 536549, at *4 (S.D. Miss. Feb. 8, 2017) (citing *Johnson*, 2012 WL

---

[10] *See* Storage-Facility Rental Clerk, DOT No. 295.367-026, 1991 WL 672594 (1991).

5472418, at *13 (examining *Welch v. Astrue*, Civ. No. 1:11-cv-384, 2012 WL 3113148, at *5 (D. Me. July 11, 2012) (surveying circuits), *report and recommendation adopted*, 2012 WL 3113144 (D. Me. July 31, 2012)). And the undersigned finds it appropriate to "follow[ ] the majority of this circuit's district courts in holding that an RFC limited to simple, routine, and repetitive tasks is not in apparent or direct conflict with a Level-Three-Reasoning occupation." *Gates v. Berryhill*, Civ. No. 3:18-cv-283, 2019 WL 3761148, at *2 (S.D. Miss. Aug. 9, 2019). Therefore, Plaintiff's argument that the job of a storage rental clerk exceeds the limitations imposed by his mental RFC lacks merit.

Additionally, Plaintiff's reliance on the out-of-circuit, non-binding *Hackett* decision, is misplaced. *See* Mem. [13] at 12. Contrary to Plaintiff's assertion, the Tenth Circuit did not hold that jobs requiring a level-three reasoning "*are* inconsistent with simple and routine works tasks." *Id* (emphasis added). Instead, it held that a limitation to simple, routine work "*seems* inconsistent with the demands of level-three reasoning . . . ." *Hackett*, 395 F.3d at 1176 (emphasis added). And as the district court in *Johnson* explained, the Tenth Circuit's holding contradicts that of every other circuit to have addressed this issue. 2012 WL 5472418, at *11.

Moreover, contrary to Plaintiff's assertion, it is questionable whether a conflict between his functional limitations and the job of storage rental clerk during his cross-examination of the VE or closing statement was "apparent" because Plaintiff failed to raise the issue during his cross-examination of the VE or closing statement. *See Abel v. Astrue*, Civ. No. 3:09-cv-327, 2011 WL 1099890 at *7 (S.D. Miss. Mar. 2, 2011).

By failing to raise this issue, Plaintiff deprived the ALJ of the opportunity to address and explore it. *Jasso v. Barnhart*, 102 F. App'x. 877, 878 (5th Cir. 2004). Plaintiff should now not "be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000).

Next, Plaintiff argues that because the job of storage rental clerk requires a mathematical skill level of three, and he allegedly only completed part of the ninth grade, he lacks the ability to perform that job. Mem. [13] at 13. To begin with, as the ALJ pointed out, Plaintiff's assertion that he completed only part of the ninth grade is inconsistent with other evidence in the record. Admin. R. [10] at 22-23. Plaintiff told Dr. Boggs that "he was 'put out' of school at age [twelve] and that he reached the ninth grade." *Id.* at 423. However, she noted that "[t]his age and grade level doesn't quite match." *Id.* In a disability report, Plaintiff indicated that he had completed the ninth grade. *Id.* at 234. Yet, he also told Dr. Thomas Cullom that he had received a "diploma." *Id.* at 417. Thus, it remains unclear whether Plaintiff completed some or all of the ninth grade.

Notwithstanding, the regulations consider a seventh through ninth-grade education to be a "limited education," which allows the person to perform unskilled work. *See* 20 C.F.R. § 404.1564(b)(3). Social Security Ruling 00-4P provides that "unskilled work corresponds to a[ ] [Specific Vocational Preparation ("SVP")] of 1-2."

20

2000 WL 1898704, at *3. The job of storage rental clerk has an SVP of two. *See* 1991 WL 672594.  Thus, even if Plaintiff's assertion that he only completed part of the ninth grade is true, he would still be able to perform the job of storage rental clerk. *See Palomo v. Barnhart*, 154 F. App'x. 426, 430 (5th Cir. 2005) (finding that the claimant failed to show her alleged ninth grade education would prevent her from performing the unskilled work identified by the VE and adopted by the ALJ).

It is also worth noting that Plaintiff's education is just one of several factors the Court must weigh in determining whether substantial evidence supports the ALJ's decision. *See Perez*, 415 F.3d at 464; 20 C.F.R. § 404.1520(a)(4)(v) (RFC, age, education, and work experience). As previously discussed, the ALJ's RFC determination, which provided a number of limitations for Plaintiff, was supported by substantial evidence. The ALJ also found that the storage rental clerk job comports with Plaintiff's age and work experience. Admin. R. [10] at 26. "Moreover, as the Fifth Circuit observed in *Carey*, the [D.O.T.] job descriptions are not comprehensive and should not be given a role that is exclusive of the Vocational Expert's testimony as to whether a particular claimant can perform a particular job." *Abel*, 2011 WL 1099890 at *7. Therefore, Plaintiff's argument that the job of a storage rental clerk exceeds his mathematical skill level lacks merit.

Finally, Plaintiff argues that the ALJ erred by failing to resolve the alleged conflict between her testimony and the DOT. The Fifth Circuit has long "recognized that the DOT is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job." *Carey*, 230 F.3d at

145 (internal citations omitted). Thus, "[a] vocational expert is called to testify because of [her] familiarity with job requirements and working conditions. The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attribute skills needed." *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (internal citations omitted). And the Fifth Circuit has recognized that an ALJ is entitled to rely on a VE's knowledge of job requirements. *Carey*, 230 F.3d at 146. Yet, the Fifth Circuit has also recognized that Social Security Ruling 00-4p imposes on the ALJ "an affirmative responsibility to ask about 'any possible conflict' between VE evidence and the DOT . . . before relying on VE evidence to support a determination of not disabled." *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) (citing *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014)).

Here, in response to the ALJ's hypothetical question, the VE – which Plaintiff offered no objection to – testified that an individual of Plaintiff's age, education, and RFC, could perform the job of a storage rental clerk, as well as a ticket taker and ticket seller. Admin. R. [10] at 69-71. Later, the ALJ noted that she included some issues in the hypothetical question that may not specifically be addressed by the DOT. *Id*. at 73-74. The ALJ then asked the VE "[ ] with regard to any opinions that you have offered that are not specifically addressed by the [DOT], on what have you based your opinion." *Id*. at 74. To which the VE responded, "[t]hose answers were based upon my experience, education, and research and my fieldwork outside of Social Security." *Id*. Thus, the ALJ complied with her duty to inquire about the existence of

any potential conflicts and the VE provided a reasonable explanation for any conflict that may have existed.

It is also worth noting that an ALJ may rely on a VE's testimony if the hypothetical question reasonably incorporates all of the claimant's disabilities that were recognized by the ALJ, and "the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions . . . " *Bowling*, 36 F.3d at 436. In this case, the ALJ presented a hypothetical that contained all the limitations that were supported by the record. Admin. R. [10] at 69-70. In response, the VE testified that a claimant with these limitations could perform the jobs identified, *id.* at 70-71, even when accounting for limitations not specifically addressed by the DOT, *id.* at 73-74. Plaintiff's counsel had an opportunity to raise questions regarding the hypothetical, and did;[11] however, he raised no objections regarding the alleged conflict between Plaintiff's reasoning or mathematical skill levels and the jobs identified. *Id.* at 71-73. Therefore, the ALJ was entitled to rely on the VE's unchallenged testimony that Plaintiff could perform the job of storage rental clerk. Accordingly, substantial evidence supports the ALJ's decision, and these arguments do not provide a basis for reversal or remand.

---

[11] Plaintiff's counsel questioned the VE regarding the potential effect on Plaintiff's ability to perform other work if he could not concentrate fifteen percent of the time, if he needed to lie down at unpredictable intervals, or if he needed to elevate at the waist level half of the day. Admin. R. [10] at 71-73. Plaintiff's counsel also asked the VE to confirm that light work required sitting and standing for six hours and inquired whether the VE considered the ALJ's statement that Plaintiff would have to use an assistance device to frequency ambulate. *Id.* at 73.

b.    *Ticket Taker Job*

Plaintiff also contends that the job of ticket taker does not exist in significant numbers in the national economy. Mem. [13] at 13. In establishing work that exists in significant numbers in the national economy, the ALJ may rely on VE's testimony in response to hypothetical questions or on the "the Grids," the Medical-Vocational Guidelines promulgated for this determination. *See Newton*, 209 F.3d at 458; *Bowling*, 36 F.3d at 435; 20 C.F.R. Pt. 404, Subpt. P, App. 2. Here, the ALJ relied upon the testimony of the VE to determine that there were a significant number of jobs in existence in the national economy that Plaintiff could perform. *See* Admin. R. [10] at 26-27. Specifically, the ALJ relied on the VE's testimony in finding that 8,884 jobs nationally for the ticket taker position and 42,765 jobs nationally for the storage rental clerk position are sufficient to constitute "jobs that exist in significant numbers in the national economy that the claimant can perform." *Id*. at 26.

However, Plaintiff argues that 8,884 jobs nationally for a ticket taker position does not constitute the significant number of jobs necessary to meet the Commissioner's step five burden. Mem. [13] at 13. According to Plaintiff, "[t]he Fifth Circuit has found that 50,000 jobs in the national economy is a significant number of jobs and would support a determination that alternative work exists which the claimant could perform." *Id* (citing *Lirley v. Barnhart*, 124 F. App'x. 283, 284 (5th Cir. 2005).

As an initial matter, Plaintiff did not carry his burden of rebutting that he could perform the job of storage rental clerk. Nor did he challenge, at the

24

administrative hearing, *see* Admin. R. [10] at 71-75, or in his Motion [12] for Summary Judgment, whether that job existed in significant numbers. Thus, the issue raised with regard to the job of ticket taker does not provide a basis for reversal or remand. *See, e.g., Hoelck v. Astrue*, 261 F. App'x. 683, 687 (5th Cir. 2008) (providing if ALJ identifies one job claimant can perform, errors as to other jobs identified by ALJ are harmless).

Additionally, Plaintiff's reliance on *Lirley* is misplaced. To begin with, as an unpublished decision, *Lirley* lacks precedential value. *See* 5th Cir. R. 47.5.4 ("Unpublished opinions issued on or after January 1, 1996*, are not precedent, except under the doctrine of res judicata, collateral estoppel or law of the case (or similarly to show double jeopardy, notice, sanctionable conduct, entitlement to attorney's fees, or the like)."). Contrary to Plaintiff's assertion, the *Lirley* panel did not hold that 50,000 jobs *per se* constitutes a significant number of jobs existing in the national economy. Instead, the panel held that "[i]n light of the vocational expert's testimony that Lirley could perform the job of surveillance system monitor and that 50,000 such jobs exist in the national economy, substantial evidence supports the Commissioner's finding that Lirley is not entitled to Social Security disability benefits." *Lirley*, 124 F. App'x 283, 284 (5th Cir. 2005). The recitation of the fact that the VE identified 50,000 surveillance system monitor jobs existing in the national economy, provides no support for the assertion that the panel endorsed a bright line rule that any number less would constitute an insufficient number of jobs existing in the national economy.

In fact, as district courts throughout this Circuit have recognized, the Fifth Circuit has not established a bright line rule on what constitutes a significant number of jobs in existence in the national economy. *See Thorn v. Comm'r Soc. Sec.*, Civ. No. 7:21-cv-93, 2022 WL 2307934, at *3 (N.D. Tex. June 3, 2022), *report and recommendation adopted*, 2022 WL 2306951 (N.D. Tex. June 27, 2022); Michaud v. U.S. Comm., Soc. Sec. Admin., Civ. No. 6:19-cv-1580, 2021 WL 790190, at *5 (W.D. La. Jan. 19, 2021), *report and recommendation adopted*, 2021 WL 786730 (W.D. La. Mar. 1, 2021); *Thomas v. Astrue*, Civ. No. 1:10-cv-472, 2012 WL 3544837, *6 (S.D. Miss. July 31, 2012), *report and recommendation adopted*, 2012 WL 3544846 (S.D. Miss Aug. 16, 2022).

Yet, resolving the question of what constitutes a significant number of jobs for one occupation, is not necessary in this case. As the Commissioner's implementing regulations provide, work exists in the national economy "when there is a significant number of jobs (in *one or more* occupations) having requirements which [the Plaintiff is] able to meet . . . ." 20 C.F.R. § 404.1566(b) (emphasis added). As one of our sister courts has noted, "[ ] the district courts in this Circuit have held that the Commissioner satisfies her burden at step five by showing 'the existence of only one job with a significant number of available positions that the claimant can perform.'" *Dell v. Berryhill*, Civ. No. 18-756, 2019 WL 4666353, at *14 (M.D. La. Aug. 29, 2019) (quoting *Gaspard v. Soc. Sec. Admin., Comm'r.*, 609 F. Supp.2d 607, 617 (E.D. Tex. 2009)(citations omitted) (citing *Caronia v. Colvin*, Civ. No. 4:12-cv-595, 2013 WL 5192904, at *7 (N.D. Tex. Sept. 13, 2013)); *see also Lucia A. v. Saul*, Civ. No. 4:19-cv-

04685, 2021 WL 707672, at *8 (S.D. Tex. Jan. 26, 2021) (finding that substantial evidence supports the ALJ's step five determination where one of the jobs identified by the VE satisfied Plaintiff's limitations and existed at significant numbers in the economy). Because the ALJ identified at least one job – storage rental clerk – which comported with Plaintiff's limitations and existed in significant numbers in the economy, the Commissioner has carried her burden at step five.

Moreover, as another court in this district has noted, "[b]oth the regulations and case law make clear, [ ], that it is the number of existing job positions, and not the number of occupations, that the ALJ must consider in deciding whether there is a significant number of jobs." *Wilson v. Berryhill*, Civ. No. 3:16-cv-71, 2017 WL 5056420, at *7 (S.D. Miss. June 19, 2017) (quoting *Rodriguez v. Astrue*, Civ. No. 1:11-cv-6977, 2013 WL 3753411, at *13 (S.D. N.Y. July 17, 2013) (citing 20 C.F.R. § 404.1566(b))), *report and recommendation adopted*, 2017 WL 4247556 (S.D. Miss. Sept. 25, 2017). Here, the ALJ identified a cumulative total of 51,649 jobs Plaintiff could perform in the national economy based on his age, education, work experience, and RFC. *See* Admin. R. [10] at 26. This constitutes a significant number, even under Plaintiff's proffered standard. *See* Mem. [13] at 13. Accordingly, substantial evidence supports the ALJ's decision, and this argument does not provide a basis for reversal or remand.

## IV.  RECOMMENDATION

For the reasons stated above, the undersigned United States Magistrate Judge recommends denying the Motion [12] for Summary Judgment, affirming the Acting Commissioner of Social Security's decision, and dismissing this case with prejudice.

recommends affirming the Acting Commissioner of Social Security's decision and dismissing this case with prejudice.

## V.   NOTICE OF THE RIGHT TO OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections within fourteen days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 8th day of August 2022.

*s/ Bradley W. Rath*

HONORABLE BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE