UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JIMMY JONES                                                                      PLAINTIFF

V.                                           CIVIL ACTION NO. 3:20-CV-00608-KHJ-BWR

KILOLO KIJAKAZI, Acting
Commissioner of Social Security[1]                                              DEFENDANT

ORDER

Before the Court is the Report and Recommendation ("Report") of United States Magistrate Judge Bradley W. Rath. R & R [21]. For the following reasons, the Court adopts the findings and recommendations of the Magistrate Judge.

I.    Facts and Procedural History

Plaintiff Jimmy Jones ("Jones") filed an application for Title II benefits on July 16, 2018, for an alleged disability he claimed began on April 1, 2018. Admin. R. [10] at 13. The Commissioner first denied Jones's claim on October 29, 2018, and upon reconsideration, the Commissioner denied his claim again the next month. *Id.* Then, at Jones's request, an Administrative Law Judge ("ALJ") conducted a hearing on August 7, 2019. *Id.* The ALJ concluded that Jones was not disabled as defined by the Social Security Act. *Id.* at 27. After the Appeal Council denied Jones's request

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is automatically substituted—in place of Andrew Saul—as Defendant. No further action need be taken to continue this suit. 42 U.S.C. § 405(g). For the sake of clarity, the Court will refer to Saul and Kijakazi collectively as "Commissioner" in this Order.

for review of the ALJ's decision, *id.* at 5, he petitioned for judicial review of his claim pursuant to 42 U.S.C. § 405(g). Compl. [1] at 1.

In his subsequent Motion for Summary Judgment, Jones argued that the ALJ and Commissioner erred in three ways. *See* Br. Supp. Mot. Summ. J. [13] at 1-2. First, he contended the ALJ failed to include certain functional limitations related to his rotator cuff tendinitis and his detached supraspinatus tendon when making her residual functional capacity ("RFC") determination. *Id.* at 6-9. Second, he argued that the ALJ improperly substituted her own medical judgment when deciding the limitations caused by Jones's severe mental impairments in making her RFC determination. *Id.* at 9-11. And third, he argued that the Commissioner failed to establish the existence of work in significant numbers that Jones could perform. *Id.* at 11-14.

Upon review, the Magistrate Judge found there was substantial evidence to support the Commissioner's and ALJ's decisions to deny Jones's claim. *See* [21]. Consequently, the Magistrate Judge recommended denying Jones's Motion for Summary Judgment, affirming the Commissioner's initial decision, and dismissing Jones's case with prejudice. *Id.* at 27. Jones timely objected to the Magistrate Judge's Report. *See* Obj. R & R [22]. Jones confines his objections to the second and third arguments from his Motion for Summary Judgment.

II.    Standard

The Court reviews Jones's objections to the Magistrate Judge's Report *de novo.* 28 U.S.C. § 636(b)(1)(C). But the remaining portions of the Report, are subject

to a "clearly erroneous, abuse of discretion, and contrary to law" standard of review. *See United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989).

   III.   Analysis

The Court must uphold the Commissioner's decision to deny social security benefits if it is "supported by substantial evidence and . . . the Commissioner used the proper legal standards to evaluate the evidence." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Newton*, 209 F.3d at 452 (citation omitted). The Court should not "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Id.*

Because Jones confined his objections to the Magistrate Judge's Report to the second and third issues presented in his Motion for Summary Judgment, *see* [22] at 2, the Court reviews the first issue for clear error, abuse of discretion, or as contrary to law; and the second and third issues, *de novo*.

>   A. The Magistrate Judge's finding that there was substantial evidence
>      to support the ALJ's physical RFC determination was not clearly
>      erroneous, an abuse of discretion, or contrary to law.

In his Motion for Summary Judgment, Jones asserted the ALJ erred by not including certain functional limitations related to his rotator cuff tendinitis and his detached supraspinatus tendon when making her RFC determination. [13] at 6-7. Contrarily, the Magistrate Judge found that the ALJ *did* include functional

3

limitations related to these impairments. [21] at 7. The Magistrate Judge supported this finding with many citations to the administrative record. *See id.* at 7-9. And he explained that an individual asserting a disability claim has the burden of proving their disability and Jones did not meet his burden because he did not explain what added or alternative limitations should have been included in the RFC determination. *Id.* at 9. Finally, the Magistrate Judge noted that Jones's assertion that failure to incorporate functional limitations into an RFC for severe impairments requires a remand is a misstatement of the relevant case law. *Id.* at 9-10.

Although the ALJ must consider severe impairments when making an RFC determination, she does "not necessarily [have to] assess limitations for each severe impairment." *Id.* at 10 (quoting *Winston v. Berryhill*, No. 3:16-cv-419, 2017 WL 1196861, at *13 (N.D. Tex. Mar. 31, 2017)). Based on the Magistrate Judge's prolific citations to the administrative record and review of relevant case law, the Magistrate Judge's finding that there was substantial evidence to support the ALJ's physical RFC determination was not clearly erroneous, an abuse of discretion, or contrary to law. As a result, the Court adopts the Magistrate Judge's findings on this issue.

> B. Substantial evidence supports the ALJ's mental RFC determination.

Jones next contends that the ALJ improperly substituted her own medical judgment in deciding the limitations caused by Jones's severe mental impairments when making her mental RFC determination. [13] at 9-11; [22] at 2-4. A thorough

review of the record and relevant case law, however, provide substantial evidence to support the ALJ's mental RFC determination.

The ALJ is ultimately responsible for determining a claimant's RFC. 20 C.F.R. § 404.1546(c); *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012) (per curiam). Although the ALJ cannot completely disregard medical testimony in making an RFC determination, *see Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995), the ALJ's decision need not mirror a medical opinion, *see Taylor*, 706 F.3d at 602-03; *Myers v. Saul*, No. SA-20-CV-00445-XR, 2021 WL 4025993, at *7 (W.D. Tex. Sept. 3, 2021). Rather, it is the ALJ's duty to interpret the medical evidence along with other relevant evidence to determine a claimant's capacity for work. *Taylor*, 706 F.3d at 603.

In her mental RFC assessment, the ALJ concluded Jones can: (1) "understand, remember, and carry out instructions to perform simple, routine tasks"; (2) "respond appropriately to others and work situations where there is frequent interaction with supervisors, coworkers and the general public"; and (3) "sustain concentration and persistence for two-hour periods at a time." [10] at 19. Jones argues that the ALJ provided "no evidence" to support these determinations. [13] at 9-11; [22] at 3-4. But Jones overlooks Dr. Jan Boggs's testimony. *See* [10-6F] at 422-425. After interviewing Jones and completing several tests, Dr. Boggs concluded that Jones was of "low average intelligence," "[h]is remote recall was fairly good," and he was "able to follow directions and sustain tasks." *Id.* at 424-425. Furthermore, Dr. Boggs stated Jones "seems to have more physical than mental

limitations." *Id.* at 425. Not only did the ALJ consider Dr. Boggs's report when making her RFC determination, but she found Dr. Boggs's opinion to be "persuasive" and adopted many of his findings. [10] at 25. Along with Dr. Boggs's medical evaluation, the ALJ based her mental RFC assessment on Jones's own statements and her personal interactions with him. *Id.* In one of his function reports, Jones admitted that he can visit with other individuals daily, goes to the store regularly, and gets along "great" with authority figures. [10-9E] at 274-277. And the ALJ noted Jones "was able to concentrate sufficiently to answer questions at [his] hearing, and he was able to report his symptoms to medical sources." [10] at 18.

Based on Dr. Bogg's report, the ALJ's interpretation of that report, and the ALJ's other observations, there is substantial evidence to support the ALJ's mental RFC determination. As a result, the Court overrules Jones's objections and adopts the Magistrate Judge's findings on this issue.

> C. Substantial evidence supports the Commissioner's step five jobs determination.

Finally, Jones contends the Commissioner failed to establish the existence of work in significant numbers within his RFC. Jones first argues that the job of storage rental clerk, which requires level-three reasoning, is inconsistent with the limitations described by the ALJ. Accordingly, he argues, the ALJ erred by relying on the Vocational Expert's ("VE") testimony. [13] at 11–13; [22] at 4–7. Second, Jones argues that the ticket-taker position does not exist in significant numbers in the national economy [13] at 13–14; [22] at 7-8.

> i. The ALJ did not err by relying on the VE's testimony on the storage-rental clerk position.

The Fifth Circuit has not decided whether a job requiring level-three reasoning necessarily conflicts with an RFC limited to simple and unskilled work. *See Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000). But most Circuits have concluded that such a job "is not inherently inconsistent with a limitation to simple, routine tasks." *Johnson v. Astrue*, No. CIV.A. 11-3030, 2012 WL 5472418, at *11 (E.D. La. Oct. 5, 2012) (collecting cases), *report and recommendation approved*, No. CIV.A. 11-3030, 2012 WL 5472303 (E.D. La. Nov. 9, 2012). And the Fifth Circuit has held the "[Dictionary of Occupational Titles] is not comprehensive" and "it cannot and does not purport to include each and every specific skill or qualification for a particular job." *Carey*, 230 F.3d at 145. Thus, when an apparent conflict arises, "the DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony." *Id.* Rather, the ALJ should rely on the vocational expert, whose "value . . . is that he or she is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* (citation omitted). Still, the ALJ does have "an affirmative responsibility to ask about 'any possible conflict' between VE evidence and the DOT" before relying on the VE's decision. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) (citation omitted).

Following most other courts, the Court holds that a job requiring level-three reasoning—in this case the job of a storage rental clerk—does not necessarily conflict with an RFC limited to simple, unskilled work. Nor did the ALJ err by

7

relying on the VE's testimony that Jones could perform the work of a storage rental clerk. As noted above, the "value" of a vocational expert "is that she is familiar with the specific requirements of a particular occupation." Based on her specialized knowledge, the VE testified that an individual with Jones's characteristics could perform the job of a storage rental clerk, a ticket taker, or a ticket seller. [10] at 69-71. The ALJ then asked the VE what her opinions outside the DOT were based on. *Id.* at 74. The VE responded: "Those answers were based upon my experience, education, and research and my fieldwork outside of Social Security." *Id.* Thus, the ALJ fulfilled her responsibility to ask about conflicts between the VE's evidence and the DOT.

The Court also notes that Jones's arguments lack merit because he failed to raise them during his cross-examination of the VE or at any other time during his hearing. As the Fifth Circuit has explained, a claimant "should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Carey*, 230 F.3d at 146–47. Jones argues that "[t]he responsibility for determining conflicts in the VE testimony and resolving such conflict rests squarely upon the ALJ." [22] at 5. Yet, as stated above, a job requiring level-three reasoning does not necessarily conflict with an RFC limited to simple and unskilled work.

In fact, the Fifth Circuit has distinguished "actual conflicts" and "factual disagreements" about whether a person can perform a job outlined in the DOT. *See Carey*, 230 F.3d at 146–47. Here, there are no actual conflicts but only factual disagreements about whether Jones has adequate mental capabilities to perform the job of a storage rental clerk. *See* [13] at 13; [22] at 5–7. Jones's counsel had a chance to cross-examine the VE as to any factual disagreements concerning issues not specifically addressed by the DOT, but he did not do so. [10] at 73–74. Instead, like the claimant in *Carey*, Jones now contends on appeal that the VE's testimony should be explored further, when Jones himself failed to do so in his hearing. *See Carey*, 230 F.3d at 146; [22] at 7. This Court, however, is not permitted to "reweigh the evidence in the record, try the issues *de novo*, or substitute [its] own judgment for that of the Commissioner, or even the testifying witnesses." *Carey*, 230 F.3d at 146 (citation omitted); *Newton*, 209 F.3d at 452. Thus, the Court finds that the ALJ did not err by relying on the VE's testimony about Jones's ability to perform work as a storage rental clerk. Any factual disputes over this issue should have been raised at Jones's initial hearing. Based on the VE's testimony and other evidence in the record, there is substantial evidence to support the ALJ's finding that Jones can perform work as a storage rental clerk. As a result, the Court overrules Jones's objections and adopts the Magistrate Judge's findings on this issue.

> ii. Determining whether the ticket taker job exists in significant numbers in the national economy is not necessary.

Jones premises his final argument on the assumption that he cannot perform the job of storage rental clerk. [22] at 7. In fact, Jones agrees that if it is found he

9

can perform the job of storage rental clerk, then "the Acting Commissioner has established a significant number of jobs which [Jones] can perform." *Id.* The ALJ found that 8,884 ticket taker jobs and 42,765 storage rental clerk jobs existed in the national economy, for a total of 51,649 jobs. [10] at 27. And the Fifth Circuit has held that the existence of 50,000 jobs in the national economy provides substantial evidence of a significant number of jobs. *Lirley v. Barnhart*, 124 Fed. App'x 283, 284 (5th Cir. 2005).

Because substantial evidence supports the ALJ's finding that Jones can perform work as a storage rental clerk, the Court need not determine whether the ticket taker job exists in significant numbers in the national economy.

IV.    Conclusion

The Court concludes the Magistrate Judge's findings of fact and conclusions of law are correct. For the reasons in the Magistrate Judge's Report and Recommendations [21] and contained herein, the decision of the Commissioner is affirmed.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Report and Recommendations [21] of United States Magistrate Judge Bradley W. Rath, entered in this case are adopted as the findings and conclusions of this Court.

IT IS, FURTHER, ORDERED AND ADJUDGED that Jones's Motion for Summary Judgment [12] is DENIED, the Commissioner's final decision is AFFIRMED, and this action is DISMISSED with prejudice.

A separate Final Judgment will issue this day.

SO ORDERED AND ADJUDGED, this the 6th day of September, 2022.

                                               s/ *Kristi H. Johnson*
                                               UNITED STATES DISTRICT JUDGE